[Crim. No. 36260. Second Dist., Div. Two. Jan. 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE RENEE DUNCAN, Defendant and Appellant.

**COUNSEL**

Joseph F. Walsh, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Edward T. Fogel, Jr., and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BEACH, J.—A jury found appellant guilty of three counts of kidnaping (Pen. Code, § 207), three counts of rape (Pen. Code, § 261, subds. 2 and 3), and three counts of oral copulation (Pen. Code, § 288a, subd. (c)). The trial court sentenced appellant to state prison. Appellant appeals, claiming the trial court committed reversible error in denying his motions to suppress evidence and to have the victims examined by a psychiatrist, and in admitting evidence of appellant's arrest on an unrelated matter. Appellant also contends his convictions must be reversed because the victims' testimonies were inherently incredible.

## DISCUSSION

1. *Denial of Motion to Suppress Evidence*

Appellant contends the trial court should have granted his motion to suppress evidence (Pen. Code, § 1538.5) because (1) the affidavit to the search warrant failed to establish probable cause to search his apartment, (2) the police unlawfully seized two poetry books not listed in the warrant, and (3) the warrant contained an overbroad description of items to be seized.

A search warrant may be issued upon a showing of probable cause. (Pen. Code, § 1525.) Probable cause, not certainty, is the cornerstone of the process of issuing a warrant. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 96 [104 Cal.Rptr. 226, 501 P.2d 234].) ▆ Search warrants are presumptively valid; issuance thereof by a magistrate will be set aside only if the affidavits presented to him, as a matter of law, show a lack of probable cause. (*People* v. *Miller* (1978) 85 Cal.App.3d 194, 200 [149 Cal.Rptr. 204].) Resolution of doubtful or marginal cases in this area "should be largely determined by the preference to be accorded to warrants." (*United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) ▆ Additionally, an affidavit in support of the warrant must be interpreted in a common sense manner rather than a hypertechnical one because they are normally drafted by nonlawyers in the midst and haste of a criminal

investigation. (*Spinelli* v. *United States* (1969) 393 U.S. 410, 415 [21 L.Ed.2d 637, 643, 89 S.Ct. 584]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337]; *People* v. *Miller, supra*, 85 Cal.App.3d 194, 200.)

■ Appellant claims that since victim Shirley L. told the affiant, Officer Duff, that appellant orally copulated and raped her at his apartment at 1135 Van Buren, there was no probable cause for a search of 11125-1/2 South Van Buren, appellant's actual apartment. While the affidavit showed that Shirley L. told Officer Duff she believed appellant to be residing at 1135 Van Buren, the affidavit also recited facts which indicated that appellant's actual address was 11125-1/2 and not 1135 Van Buren. Thus, the affidavit contained the following information:

Victims Shirley P. and Shirley L. both told Officer Duff that their attacker, a black male in his 30's, approximately 6 feet tall and weighing 195-235 pounds, with a mustache and a beard, was driving a brown 2-door car with the license number 448 LGG. Shirley P. believed the car to be a Vega, while Shirley L. thought it was a Capri.

While driving down Van Buren Avenue to locate the apartment described by Shirley L., Officer Duff observed a brown two-door Capri bearing the license number 448 LGG parked outside an apartment building at 11125 Van Buren. Officer Duff also determined there was no such address as 1135 or 11135 Van Buren. However, the building at 11125 Van Buren did meet Shirley L.'s description of the apartment building to which appellant had taken her. She had described the building as located near a dip at a stop sign on Van Buren, approximately one and one-half blocks north of Imperial. She further described the building as a two-story building enclosed by a chain link fence with a walkway along the northside. She also said appellant lived in an upstairs unit, which she described in detail.

While keeping the building at 11125 under surveillance, Officer Duff saw a black male with a mustache and a beard, fitting the description given by Shirley P. and Shirley L., exit an upstairs apartment and enter the brown Capri and leave.

Thereafter, Officer Duff talked to Mrs. Brookins, the manager of the apartment building. Mrs. Brookins told the officer that appellant lived at *apartment No. 11125-1/2 and that on the morning Shirley L. had been abducted and sexually attacked, Mrs. Brookins had seen appellant*

enter his apartment at 7:45 a.m. with a woman who was wearing a gray fake fur jacket. Shirley L. was in fact wearing such a jacket on the morning in question. Mrs. Brookins further told the officer that shortly after appellant's entry into his apartment with the woman, she heard sounds of beating coming from the apartment, and that she had heard such sounds on previous occasions after seeing appellant enter his apartment with other women.

■ "The requirement that the warrant particularly describe the place to be searched is met if the description is sufficiently definite that the officer conducting the search can with reasonable effort ascertain and identify the place intended." (*People* v. *Superior Court (Fish)* (1980) 101 Cal.App.3d 218, 222 [161 Cal.Rptr. 547].) ■ This test was met here. We conclude the affidavit contained sufficient facts from which it could reasonably be inferred that appellant resided at 11125-1/2 Van Buren. (*Id.* at pp. 222-223.)

■ Appellant further claims that the police seizure of two notebooks of poetry was improper because the search warrant had not authorized the seizure of those items. In view of the fact that the police report on the Shirley L. incident, which was attached to the affidavit, stated that appellant recited poetry to Shirley L. in his apartment, the police, upon discovering the two notebooks of poetry during their authorized search of the apartment, had reason to believe that the poetry books constituted potential evidence of appellant's involvement in the crimes committed against Shirley L. and that their seizure appeared necessary for preservation. (*People* v. *Curley* (1970) 12 Cal.App.3d 732, 747-748 [90 Cal.Rptr. 783].) As the trial court noted, the reading of poetry by a rapist to his victim certainly is a rather unique circumstance. Moreover, the search warrant authorized the seizure of "[a]ny articles of personal property tending to establish the identification of persons in control of premises...." The poetry in the notebooks was handwritten. An analysis of that handwriting, therefore, could have established the identity of the person occupying the premises. Hence, seizure of the notebooks of poetry was authorized under the specific language of the warrant. We hold the items were properly admitted into evidence.

■ Finally, appellant contends the search warrant was overbroad in authorizing the seizure of "women's apparel." A warrant must particularly describe the items to be seized at the place to be searched. (*Burrows* v. *Superior Court* (1974) 13 Cal.3d 238, 249 [118 Cal.Rptr. 166, 529 P.2d 590].) Such items must be described with "reasonable"

particularity. (Pen. Code, § 1529.) This requirement is satisfied if the warrant imposes a meaningful restriction upon the objects to be seized. (*People* v. *Tenney* (1972) 25 Cal.App.3d 16, 22 [101 Cal.Rptr. 419].) Here, the affidavit described how once inside his apartment, appellant showed Shirley L. a suitcase containing women's clothing. The warrant authorized, among other things, the seizure of women's apparel and a black suitcase. We conclude that in this case the term "women's apparel" described the property to be seized at the apartment of the suspected rapist with reasonable particularity. Moreover, the items of women's clothing which the police seized during their search of the apartment were all contained in a suitcase, whose seizure had been specifically authorized by the warrant. Even if the warrant had not authorized the seizure of women's apparel, once the officers discovered the women's clothes in the suitcase they could properly seize the items in view of what Shirley L. had told them about the women's clothes in the suitcase, which provided the officers with reasonable cause to believe there was a rational link between the women's clothes and possible criminal behavior by appellant towards Shirley L. (*People* v. *Superior Court (Meyers)* (1979) 25 Cal.3d 67, 73 [157 Cal.Rptr. 716, 598 P.2d 877].)

### 2. *Denial of Appellant's Motions for Psychiatric Examinations of Complaining Witnesses*

■ Appellant claims the trial court abused its discretion in denying his motions to compel the complaining witnesses to undergo a psychiatric examination.

In sex offense cases, a trial court may, to assist the trier of fact in its assessment of credibility, order a psychiatric examination of the prosecuting witness to ascertain the witness' mental and emotional condition as it might affect the witness' credibility. (*People* v. *Russel* (1968) 69 Cal.2d 187, 193 [70 Cal.Rptr. 210, 443 P.2d 794].) Whether or not to order such an examination is within the discretion of the trial court. (*People* v. *Francis* (1970) 5 Cal.App.3d 414, 419 [85 Cal.Rptr. 61].) A necessity for such an order would generally arise only "if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity." (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].)

As the trial court in this case properly pointed out, *Ballard* motions are most often granted in sex offense cases where the victim is a child, because of the possibility of fantasizing by the child. In contrast, the victims here were not children but adult women. As the trial court stated: "In this case each of these three incidents involves a woman who claims she was snatched off the street at the point of a weapon, that her life was threatened, she was taken to a location and raped.

"There is nothing about that that suggests any kind of psychiatric problem or emotional problem or anything of the sort. I mean either it happened or it didn't happen, you know, like any other offense."

At some later point, the trial court said: "I have read the transcript of the preliminary hearing, and I don't have a recollection of shallowness or inconsistancy [*sic*] of these young women. As a matter of fact, I don't see anything at all in their testimony from which I can find any suggestion of a psychiatric problem." We conclude the trial court did not abuse its discretion in denying appellant's motions to compel the complaining witnesses to undergo psychiatric examinations.[1]

### 3. *Admissibility of Prior Arrest*

■ Appellant argues the trial court committed reversible error in permitting the prosecutor on cross-examination to elicit testimony from appellant that he had been arrested on a prior occasion under a different name.

In his cross-examination of appellant, when the prosecutor asked appellant his name, appellant replied, "Ronnie Ray Duncan." The prosecutor then noted that the name "Brian Anderson" appeared underneath the songs in the notebook seized from appellant's apartment. Appellant stated that he used the Anderson name in his songwriting for the purpose of copyright protection, and that he had never used that name on any other occasion. However, upon further questioning, appellant testified he had used the name Brian Anderson when he registered at the motel to which he had taken Shirley P. because he was married, that he had also used the Anderson name as a stage name when he was

---

[1]We note that Senate Bill No. 500, which was enacted on February 25, 1980, and which became effective on January 1, 1981, as section 1112 of the Penal Code, provides that a trial court "*shall not order* any prosecuting witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her credibility." (Italics added.)

singing in a group, and that he had also obtained an identification card in that name and with a different birthdate from the Department of Motor Vehicles (DMV). Other than those occasions appellant said he had never used the Anderson name to hide his identity. When the prosecutor asked appellant if he had ever represented himself as Brian Anderson to a law enforcement agency, appellant replied he had not. The prosecutor then elicited testimony from appellant that when arrested on May 3, 1978, on a matter unrelated to this case appellant was booked under the name Brian Anderson. Appellant contends that evidence of his prior arrest was highly prejudicial because it impaired his credibility in the eyes of the jury.

Ordinarily, evidence of prior specific acts of misconduct is inadmissible either to prove conduct on a specific occasion or to attack a witness' credibility. (Evid. Code, § 1101, subd. (a).) However, Evidence Code section 1101, subdivision (b) permits the introduction of other crimes if relevant to prove some fact set out in the statute. Thus that section provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." Evidence is deemed relevant when it tends logically, naturally, or by reasonable inference to establish any fact material to the People or to overcome any material matter sought to be proved by the defense. (*People* v. *Ott* (1978) 84 Cal.App.3d 118, 127 [148 Cal.Rptr. 479]; *People* v. *Enos* (1973) 34 Cal.App.3d 25, 34 [109 Cal.Rptr. 876].)

Here, the prosecutor brought up the matter of appellant's giving a fictitious name at a prior arrest only after appellant had testified that he had never identified himself to a law enforcement agency other than by his given name. That particular instance, together with appellant's obtaining a DMV identification card in another name, and registering under a name not his own when he took one of the victims in this case to a motel, demonstrated appellant's scheme to hide his true identity and thus avoid apprehension, as the trial court recognized. "[E]vidence of a design to prevent arrest or prosecution supports the inference of consciousness of guilt and is relevant and admissible to prove the prosecution's case." (*People* v. *Ott, supra*, 84 Cal.App.3d 118, 127-128.)

Furthermore, even if the admission of appellant's prior arrest was error, it was not prejudicial. In this respect, the matter at bench is

different from the situation in *People* v. *Anderson* (1978) 20 Cal.3d 647 [143 Cal.Rptr. 883, 574 P.2d 1235], relied on by appellant. In *Anderson*, the court held it was reversible error for the trial court to permit the prosecution to introduce evidence that on two prior occasions the two defendants had been arrested together. The *Anderson* court held the error to be prejudicial because the record revealed a close case, which took several days of jury deliberations. As the court noted, but for admission of the prior arrests, it was reasonably probable that the jury would have believed the defendants' version of the events and rendered a more favorable verdict. (*Id.* at p. 651.) Here, on the other hand, the jury reached its verdict after only two and one-half hours of deliberations, and our review of the evidence indicates it is not reasonably probable that but for the admission of the prior arrest the jury would have rendered a verdict favorable to appellant. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### 4. *Credibility of Victims' Testimony*

Appellant argues the testimony of complaining witnesses Shirley P., Patricia E. and Shirley L. was inherently incredible.

Although a reviewing court will not affirm a judgment based on evidence inherently improbable, testimony which merely discloses unusual circumstances does not fall within that category. (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267].) To warrant rejection of a witness' testimony that has been believed by the trier of fact, there must exist either a physical impossibility that it is true, or its falsity must be apparent without resorting to inferences or deductions. (*Ibid.*) Conflicts and even testimony subject to justifiable suspicion do not justify a reversal, for it is the exclusive province of the trier of fact to determine the credibility of a witness. (*Ibid.*; *People* v. *Coleman* (1979) 89 Cal.App.3d 312, 325 [152 Cal.Rptr. 407]; *People* v. *Negrete* (1978) 82 Cal.App.3d 328, 340 [147 Cal.Rptr. 101].)

With regard to Shirley P., appellant claims her testimony was inherently improbable because she did not try to get out of the car while appellant registered at the motel office. Shirley P. testified that appellant had abducted her from a bus stop at knifepoint and repeatedly threatened to kill her if she tried to scream. Also, when he pulled into the motel lot, appellant, holding a knife in his hand, told Shirley P. that if she screamed he would kill her. As he got out of the car to register,

appellant put the knife in his pocket. Rather than enter the motel office, appellant stood outside by the office window, where he was only eight feet away from the car in which he had left Shirley P. From where he was standing, appellant had a view of Shirley P. Understandably, Shirley P. did not try to flee from the car.

With respect to Patricia E., appellant argues her testimony was inherently improbable because of the fact that after appellant had kidnaped her on her way to the bus stop, she took appellant to her apartment. Overlooked by appellant is the fact that he ordered Patricia E. at gunpoint to tell him where she lived. Also, Patricia E. did not "take" appellant to her apartment. After forcing Patricia E. at gunpoint to tell him where she lived, appellant drove over there with her. Patricia E. testified she did not scream once they arrived at her apartment because she was afraid appellant would use his gun on her.

We now turn to appellant's attack on Shirley L.'s testimony. She testified that when appellant started orally copulating her, she became sick at the stomach and had a bowel movement, which did not stop appellant from continuing his oral copulation of her. Appellant attacks this testimony as "inherently incredible." Though appellant's conduct, as testified to by Shirley L., might be considered unusual, to put it mildly, it was by no means physically impossible. Shirley L. testified that after she had the bowel movement on the bed, appellant simply pulled the blanket on the bed towards him and wiped his face with it. As to appellant's argument that the criminalist testified he found no trace of fecal matter on the blanket, the absence of fecal material could have been accounted for by the possibility, as the criminalist testified, that the blanket had been washed after the incident.

We conclude the victims' testimonies were not inherently improbable.

The judgment is affirmed.

Fleming, Acting P. J., and Compton, J., concurred.