[No. B120133. Second Dist., Div. Five. Mar. 30, 1999.]

In re CHERI T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHERI T., Defendant and Appellant.

#### COUNSEL

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Susan C. Diamond, Deputy Attorneys General, for Plaintiff and Respondent.

#### OPINION

**GODOY PEREZ, J.**—Appellant Cheri T., a minor, appeals from the juvenile court order which sustained a petition charging her with solicitation of prostitution and declaring her to be a ward of the court. Appellant contends there was insufficient evidence to support the petition. After review, we affirm the orders of the court.

## PROCEDURAL BACKGROUND

In a petition filed under Welfare and Institutions Code section 602,[1] appellant was charged with the crime of soliciting prostitution (Pen. Code, § 647, subd. (b).)[2] Appellant denied the allegations and the matter proceeded to trial. The court sustained the petition and declared appellant to be a ward of the juvenile court. Appellant was committed to the custody and control of the probation department for suitable placement. The court ordered the minor be placed in open placement with on-grounds school and drug abuse therapy orientation for no more than a six-month period.

## SUMMARY OF FACTS

Around 7:45 p.m. on January 12, 1998, Los Angeles Police Officer James Eldridge (Eldridge) was working as an undercover vice officer in the area of Lincoln Boulevard and Brooks Avenue in Santa Monica. As he was slowly driving southbound on Lincoln, he made eye contact with appellant, who was walking southbound on the west side of the street. Appellant waved him over to the curb and he pulled over.

Appellant walked up to Eldridge's car and got in without being asked. A conversation ensued during which the officer asked where they should go. Appellant answered that they should go to a nearby 7-Eleven market. Eldridge asked appellant whether he needed to get money, to which she replied, "yeah." Eldridge then told her he was on probation and asked appellant whether she was a police officer since he did not want to be arrested. Appellant responded, "Do I look like a fucking cop?" She asked if she could reach over and touch him to make certain he was not a cop, then grabbed Eldridge's crotch until he removed her hand. The officer drove by the 7-Eleven, but appellant did not tell him to stop or pull over.

As they were driving, Eldridge asked appellant what her specialty was and she replied that it was whatever he wanted it to be. When he asked again if she were a police officer, appellant said he could touch her if he wanted to. Eldridge then asked appellant whether she would orally copulate him. She said she would for $30. He told her that was a lot of money, to which she replied, "Oh, well, I'm not one of these ten-dollar whores." Eldridge asked appellant where they should go and she said somewhere dark. The officer gave a signal to his backup officers and they arrested appellant.

---

[1] Under that section, a minor who commits a crime may be adjudged a ward of the juvenile court. (Welf. & Inst. Code, § 602.)

[2] All further statutory references are to the Penal Code.

STANDARD OF REVIEW

■ " 'The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. [Citation.]' " (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088 [22 Cal.Rptr.2d 893], quoting *In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898].) In reviewing the sufficiency of the evidence, the appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) "To warrant rejection of a witness' testimony that has been believed by the trier of fact, there must exist either a physical impossibility that it is true, or its falsity must be apparent without resorting to inferences or deductions. [Citation.] Conflicts and even testimony subject to justifiable suspicion do not justify a reversal, for it is the exclusive province of the trier of fact to determine the credibility of a witness. [Citations.]" (*People* v. *Duncan* (1981) 115 Cal.App.3d 418, 429 [171 Cal.Rptr. 406].)

To the extent interpretation of a statute is involved, however, a purely legal question is raised for our independent review. (*R & P Capital Resources, Inc.* v. *California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436].) ■ The principles governing statutory construction are well settled. As our Supreme Court stated in *Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479 [59 Cal.Rptr.2d 20, 926 P.2d 1114], "We interpret statutory language according to its usual and ordinary import, keeping in mind the apparent purpose of the statute. [Citation.] When no ambiguity appears, we give statutory terms their plain meaning. [Citation.]" (*Id.* at p. 493.) " 'It is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. [Citation.] A statute "will not be given an interpretation in conflict with its clear purpose . . . ." [Citations.]' " (*People* v. *Bratis* (1977) 73 Cal.App.3d 751, 757-758 [141 Cal.Rptr. 45].)

" '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive

answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

In construing the Penal Code, "All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4.)

DISCUSSION

### 1. *Timing of the Overt Act*

Section 647 provides that a person commits disorderly conduct "[w]ho solicits *or who agrees to engage in . . .* any act of prostitution. A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. *No agreement to engage in an act of prostitution shall constitute a violation of this subdivision unless some act, in addition to the agreement, is done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act. . . .*" (§ 647, subd. (b), italics added.)

The italicized portion of section 647, subdivision (b) was added pursuant to Senate Bill No. 2169 (1985-1986 Reg. Sess.) (Senate Bill 2169) when the Legislature amended the statute in 1986 to close a loophole which permitted "street wise" prostitutes from avoiding prosecution.[3] Under the old law, only soliciting or engaging in acts of prostitution were punishable by section 647. Experienced prostitutes were able to exploit this to their advantage by playing "word games" with undercover vice officers, who were unable to make an arrest for solicitation if they raised the topics of either sex or money with a suspected prostitute. (*People* v. *Davis* (1988) 201 Cal.App.3d Supp. 1, 4 [247 Cal.Rptr. 359], hereafter *Davis*; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2169 (1985-1986 Reg. Sess.) July 7, 1986.)

The *Davis* court held that the overt act required by section 647, subdivision (b) had to occur *after* the agreement to engage in an act of prostitution was completed. Its conclusion was based on the following: (1) a legislative

---

[3]Senate Bill No. 2169 was approved by the Governor on September 26, 1986.

analysis said so; and (2) the language of section 647, subdivision (b) was "strikingly similar" to the language used in section 184, which states in essence that a criminal conspiracy does not exist unless and until an overt act in furtherance of the conspiracy has been committed. Because that language was interpreted to require proof of an overt act *after* the conspiratorial agreement was reached, the *Davis* court reasoned that the same requirement applied to section 647, subdivision (b). (*Davis, supra,* 201 Cal.App.3d at pp. Supp. 4-5.)

■ Relying on *Davis,* appellant contends there was insufficient evidence to find an agreement to engage in an act of prostitution under section 647, subdivision (b) because she "grabbed [the officer's] crotch prior to there being an agreement for her to commit an act of prostitution." The legislative history of Senate Bill 2169, combined with the purpose behind that legislation, leads us to a different conclusion.

As originally introduced, Senate Bill 2169 did not require proof of an overt act in furtherance of the prostitution agreement. That prompted a critical legislative analysis dated July 7, 1986, warning that ambiguous conduct or statements might lead to false arrests based on an officer's mistaken belief that the parties had agreed to an act of prostitution. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2169 (1985-1986 Reg. Sess.) July 7, 1986) The bill was later amended on August 11, 1986, to require proof of an overt act in furtherance of an agreement to engage in an act of prostitution. (Sen. Rules Com., Off. Sen. Floor Analyses, Analysis of Sen. Bill No. 2169 (1985-1986 Reg. Sess.) as amended Aug. 11, 1986.)

The August 18, 1986, legislative analysis which contended the overt act had to occur after the agreement no longer complained that ambiguous statements or conduct might lead to false arrests. Instead, it questioned whether the legislation was even necessary since it created an offense substantially similar to conspiracy (§§ 182, 184), which carried a potentially greater sentence than section 647 could impose.[4] The author of that analysis then asked: "Would this bill block the higher prostitution conspiracy penalties due to the conflict in law inuring to the benefit of the defendant? Of what advantage is the creation of a new crime which requires proof of an existing crime?" (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2169 (1985-1986 Reg. Sess.), Aug. 18, 1986.) In short, the analyst believed

---

[4]A violation of section 647 is a misdemeanor, punishable by up to six months in county jail, a fine of $1,000, or both. (§ 19.) A conspiracy to commit any crime (§ 182, subd. (a)(1)) may be punished by imprisonment in the county jail or state prison for up to one year, a fine up to $10,000, or both. (§ 182, subd. (a).)

Senate Bill 2169 was simply duplicative of the existing law of conspiracy and was therefore rife with potential legislative conflicts.

As the *Davis* court correctly observed, the overt act language used by Senate Bill 2169 in amending section 647, subdivision (b) was very similar to the language used by section 184 when describing the overt act requirement of conspiracy law.[5] That similarity must have prompted the legislative analysis as much as it did the decision in *Davis*.

If that analysis was correct, then the Legislature did little more than knowingly create a subspecies of the crime of conspiracy within section 647, subdivision (b). A conspiracy to commit any crime is punishable under section 182, subdivision (a)(1). In order to commit a conspiracy, there must be an agreement to commit a crime and an overt act in furtherance of the agreement. (§§ 182, subd. (a)(1), 184; *People* v. *Brown* (1991) 226 Cal.App.3d 1361, 1367 [277 Cal.Rptr. 309].) In order to violate section 647, subdivision (b), there must be an agreement to engage in an act of prostitution (a crime) and an overt act in furtherance of that agreement. Committing the latter offense necessarily equals a violation of the former. If the elements of both offenses are truly coextensive, yet the punishments for each differ, then Senate Bill 2169 would not only be redundant, it would lead to the absurd results about which the Legislature was warned. Under well-established rules of statutory construction already discussed, we must construe the statute to avoid such a result.

The overt act requirement of California conspiracy law exists to provide conspirators an opportunity to reconsider and terminate their agreement and therefore avoid punishment. (*People* v. *Zamora* (1976) 18 Cal.3d 538, 549, fn. 8 [134 Cal.Rptr. 784, 557 P.2d 75].) Senate Bill 2169 was amended to require an overt act in order to serve an entirely different purpose, however—to ease concerns that ambiguous conduct or statements might lead to false arrests for violations of section 647, subdivision (b). That purpose can be served by interpreting the language to require proof of some overt act in furtherance of the agreement which clarifies or corroborates that an agreement to engage in an act of prostitution was actually made. It is not necessary to impose the additional requirement that the clarifying or corroborative act must occur after the agreement was made. For the reasons set forth above, such an interpretation would produce the absurd result of

---

[5]Section 647, subdivision (b) states that an agreement to engage in an act of prostitution shall not violate the statute "unless some act, in addition to the agreement, is done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act. . . ." Section 184 states: "No agreement amounts to a conspiracy, unless some act, besides such agreement, be done within this state to effect the object thereof, by one or more of the parties to such agreement . . . ."

making the offense of agreeing to an act of prostitution coextensive with the previously existing crime of conspiracy.

It would also create yet another potential loophole for the streetwise streetwalker, who could make his or her meaning clear, yet escape prosecution because the act by which he or she did so occurred before an agreement had been reached. That is precisely what happened here. Appellant first grabbed Eldridge's crotch to make sure he was not a police officer, then said he could touch her if he wanted to assure himself that she was not a police officer. Appellant did so to let him know she was not an undercover officer pretending to accept the solicitation for an act of prostitution but instead clearly intended to perform. Her conduct thus eliminated any ambiguities as to what she agreed to do. After that, she agreed to orally copulate Eldridge for $30. Her previous conduct and statements were in furtherance of that agreement.

The purpose of Senate Bill 2169 was "to facilitate the arrest and prosecution of prostitutes" by eliminating their reliance on "word games" to avoid arrest. (*Davis, supra*, 201 Cal.App.3d at p. Supp. 4; Sen. Rules Com., Off. Sen. Floor Analyses, Analysis of Sen. Bill No. 2169 (1985-1986 Reg. Sess.) as amended Aug. 11, 1986.) Continued reliance on the rule announced in *Davis* will undermine that purpose. The language of Senate Bill 2169 was clear and unambiguous. It requires only that there be some act in addition to an agreement. It does not state that the act must follow the agreement, although it could have so provided. "If the Legislature had wished to limit [an exemption], words to achieve that result were available. It is not the province of courts 'to insert what has been omitted.' [Citations.]" (*Williams* v. *Superior Court* (1993) 5 Cal.4th 337, 357 [19 Cal.Rptr.2d 882, 852 P.2d 377].) Given the plain meaning of this statute, we presume the Legislature meant what it said: for there to be a violation of the statute, there must exist both an act and an agreement, but in no particular order.[6]

## 2. *There Was Evidence of a Postagreement Overt Act*

We alternatively conclude that, even if an overt act in furtherance of the agreement to engage in an act of prostitution was required to take place after the agreement was reached, there was sufficient evidence of such an act.

In the law of conspiracy, there is no requirement that the overt act itself be criminal, or even be an attempt to commit the crime. (*People* v. *Von Villas*,

---

[6]There is some authority for the proposition that even under the law of conspiracy, conduct which predates the formation of a completed criminal agreement may serve as an overt act under section 184. (*People* v. *Von Villas* (1992) 11 Cal.App.4th 175, 244-245 [15 Cal.Rptr.2d 112].) If so, then the *Davis* court erred in holding otherwise. We need not reach this question, however, since we hold in any event that the law of conspiracy is not applicable to the crime of agreeing to engage in an act of prostitution under section 647, subdivision (b).

*supra*, 11 Cal.App.4th at p. 244.) After coming to terms with Eldridge, appellant told him to drive to a dark place, presumably for the purpose of orally copulating him. We view this as an act in furtherance of the agreement to engage in an act of prostitution which occurred after the agreement was reached. Whether the trial court relied on these facts is irrelevant since we review the judgment, not the trial court's reasoning. (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1045 [8 Cal.Rptr.2d 221].)

### DISPOSITION

For the reasons set forth above, the orders of the juvenile court are affirmed.

Grignon, Acting P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 30, 1999. Kennard, J., was of the opinion that the petition should be granted.