[No. B185850. Second Dist., Div. Seven. Feb. 14, 2006.]

JEONGRYE KIM, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Law Offices of Larry P. Adamsky and Larry P. Adamsky for Petitioner.

No appearance for Respondent.

Rockard J. Delgadillo, City Attorney, Debbie Lew, Assistant City Attorney, and Renee Rich, Deputy City Attorney, for Real Party in Interest.

OPINION

**ZELON, J.**—In this petition for writ of mandate or prohibition, we hold that words alone can constitute an act in furtherance of an agreement to engage in an act of prostitution, providing that the statements made are unequivocal and unambiguous in moving the parties toward the agreed act. Finding that to be the case here, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 2005, Los Angeles Police Department undercover officers arrested petitioner Jeongrye Kim for agreeing to engage in an act of prostitution at the Balboa Therapy Center in Van Nuys.

On June 24, 2005, on behalf of real party in interest the People of the State of California, the Los Angeles City Attorney charged Kim with a misdemeanor violation of disorderly conduct, commonly known as prostitution. (Pen. Code,[1] § 647, subd. (b), hereafter section 647(b).) The complaint pled that Kim had "agree[d] to engage in an act of prostitution."

On June 29, 2005, Kim demurred on the ground that the complaint failed to plead the specific act in furtherance of the agreement to engage in prostitution, denying her due process of law. (§§ 647(b), 952 & 1004, subds. (2), (4), (5).)

On July 21, 2005, the city attorney filed an amended complaint, alleging that Kim had "agree[d] to engage in an act of prostitution which acts in furtherance, taken individually or together, consisted of the following acts: Defendant placed her right index finger on her mouth and told Officer

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Gutierrez to be quiet when he asked her if he could have sex with her for a little more money; raised her index finger and said 'one' after the officer asked if he could have sex for sixty dollars; stated 'yes' after the officer pointed to her groin area and asked if she was clean 'down there[;]' responded 'yes' when the officer asked whether she had a condom; and instructed the officer to take off his clothes."

That same day, after hearing argument, respondent superior court overruled Kim's demurrer. The court held that "[w]ords in conspiracy and agreements can always be in furtherance" of the agreement to engage in prostitution.

On August 4, 2005, Kim petitioned for a writ of mandate or prohibition and a request for an immediate stay before the appellate department of the superior court. On August 17, 2005, the appellate department denied the petition and request for stay.

Kim timely filed the instant petition for a writ of mandate or prohibition. We issued an order to show cause.

## DISCUSSION

### I. STANDARD OF REVIEW

This case presents an issue of law: Whether words alone can satisfy the "acts in furtherance" requirement of the statute. We review matters of statutory construction de novo. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569]; *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 596 [3 Cal.Rptr.3d 593]; see also *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 357 [127 Cal.Rptr.2d 516, 58 P.3d 367] [independent review appropriate where issue involves the proper interpretation of a statute and its application to undisputed facts].)

■ The objective of statutory interpretation is to ascertain and effectuate legislative intent. The first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].) If there is no ambiguity in the statutory language, a court must presume that the Legislature meant what it said, and the plain meaning of the statute governs. (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)

Only when the statutory language is ambiguous and susceptible to more than one reasonable interpretation do "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) "[A] subsequent expression of the Legislature as to the intent of [a] prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." (*California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 213–214 [187 P.2d 702].)

Furthermore, we must select a construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) "And, wherever possible, 'we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute.' [Citation.]" (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 193 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

## II. *AN ACT IN FURTHERANCE OF AN AGREEMENT TO ENGAGE IN AN ACT OF PROSTITUTION CAN BE VERBAL*

At issue is the interpretation of "act in furtherance" under section 647(b). Kim contends that as a matter of law her "utterances" cannot constitute an "act in furtherance" of an agreement to engage in an act of prostitution. She asserts that both legislative intent and case law support this view. We disagree.

### A. *Legislative History*

Section 647 provides: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: [¶] . . . [¶] (b) Who solicits or who agrees to engage in or who engages in any act of prostitution. A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. . . ." (§ 647(b).)

The provision expanding section 647(b) to permit conviction for an agreement to engage in an act of prostitution was added by the Statutes of 1986, chapter 1276, section 1, pages 4457–4459 (Sen. Bill No. 2169 (1985–1986 Reg. Sess.)). Senator David Roberti sponsored the bill on behalf

of the City of Los Angeles. (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as amended Aug. 11, 1986, p. 1.) At the time of the bill's introduction, unlike 24 other states with prohibitions against agreements to engage in lewd acts for money, California law barred only prostitution and its solicitation. (*Ibid.*) According to the proponent, "most prostitutes kn[e]w that if they wait[ed] until a customer mention[ed] money or sex, and then simply approve[d] the conditions, they [could not] be found guilty of soliciting prostitution. Consequently, street-wise prostitutes rarely 'solicit[ed]' prostitution, and undercover officers posing as customers often [were] unable to make arrests for prostitution." (*Ibid.*) The legislation was, therefore, "intended to give police another enforcement tool" on "prostitution laws that [were] difficult to enforce." (*Ibid.*)

Senate Bill No. 1276 initially prohibited only the agreement to engage in an act of prostitution. (Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as introduced Feb. 20, 1986.) To minimize false arrests, entrapment and use of the entrapment defense, however, the bill was amended prior to passage to include the language requiring an act in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act. (Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as amended Aug. 11, 1986; Sen Com. on Judiciary, Analysis of Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as introduced Feb. 20, 1986, pp. 4–5; Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as introduced June 30, 1986, pp. 2–3; Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as amended Aug. 11, 1986, pp. 3–4.)

In developing the act in furtherance requirement under section 647(b), the Legislature did not precisely define what such an act would be. It neither expressly included nor excluded verbal acts. The legislative reports, however, referred both to the law of attempt (§ 21a) and conspiracy (§§ 182, 184) for general guidance. (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 2169 (1985–1986 Reg. Sess.) as amended Aug. 11, 1986, pp. 2–3.) The Legislature noted that "the act must be in furtherance of an act of prostitution, itself, i.e., a lewd act." (*Id.* at p. 3.) It contemplated whether the following acts would be in furtherance of violating section 647(b): "driving around the block, after an observed conversation with a suspected prostitute," "act directly lead[ing] to sexual contact, e.g., undressing," and "transfer of money." (*Ibid.*) The legislative analysis did, however, state that "[u]nder this bill, overt acts in furtherance of prostitution (e.g., entering a car) must be committed following the agreement. Thus, acts committed before final agreement as to the price for or the nature of the lewd act may not give rise to prosecution." (*Ibid.*)

B. *Case Law*

■ In *Gaylord v. Municipal Court* (1987) 196 Cal.App.3d 1348 [242 Cal.Rptr. 486] (*Gaylord*), the first decision to interpret the language at issue, we held that section 647(b) "clearly makes an 'act in furtherance' an essential element of the offense of agreeing to engage in an act of prostitution; hence, absent an allegation of such an act a complaint does not advise the defendant of the charge against him and thereby denies him due process of law and fails to comply with the requirements of section 952." (*Gaylord, supra,* 196 Cal.App.3d at p. 1351.) There, as here, the petitioner was charged in a misdemeanor complaint with disorderly conduct in violation of section 647(b). (196 Cal.App.3d at p. 1350.) However, unlike the amended complaint in this case, the accusatory pleading in *Gaylord* failed to plead any "act in furtherance." (*Ibid.*) Thus, in issuing the peremptory writ of mandate, we did not need to reach the question of whether an "act in furtherance" can be verbal.

The next year, *People v. Davis* (1988) 201 Cal.App.3d Supp. 1 [247 Cal.Rptr. 359] (*Davis*), disapproved in part by *In re Cheri T.* (1999) 70 Cal.App.4th 1400, 1408 [83 Cal.Rptr.2d 397] (*Cheri T.*), addressed the timing rather than type of "act in furtherance." There, the defendant was convicted of agreeing to engage in an act of prostitution in violation of section 647(b), based on her assent to a price with an undercover policeman who picked her up in a cab. The appellate department of the superior court reversed, holding that there was no showing of an act done in furtherance of the agreement as required by section 647(b). The only act relied on by the prosecution was the defendant's act of entering the cab, which occurred before the agreement. The *Davis* court concluded that "the plain meaning of the language contained in section [647(b)] requires that the act done 'in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act' must happen after the agreement is reached." (*Davis, supra,* 201 Cal.App.3d at p. Supp. 5.) As in *Gaylord*, the *Davis* court did not reach the question of whether a verbal act constituted an act in furtherance.

Eleven years later, in *Cheri T., supra,* 70 Cal.App.4th 1400, Division Five of this District addressed the meaning of "act in furtherance" under section 647(b) both as to its timing and type. There, an undercover officer made eye contact with the defendant, who waived him over to the curb. She got inside the vehicle without being asked, and they spoke. The defendant asked if she could reach over and touch the officer to make certain he was not the police. She then grabbed the officer's genital area. The officer asked the defendant what her specialty was and she replied that it was whatever he wanted it to be. When he asked if she was a police officer, the defendant said he could touch her if he wished. The officer then inquired whether she would orally copulate

him. The defendant said she would for $30. He told her that was a lot of money, to which she replied, "Oh, well, I'm not one of these ten-dollar whores." The officer then asked the defendant where they should go and she replied somewhere dark; he arrested her. (70 Cal.App.4th at p. 1403.) Division Five rejected *Davis*'s holding as to the timing of the act in furtherance, holding "for there to be a violation of the statute, there must exist both an act and an agreement, but in no particular order." (*Id.* at p. 1408.) As a result, *Cheri T.* found the defendant's act of grabbing the officer and inviting him to touch her were acts in furtherance of an agreement to engage in an act of prostitution, even though they occurred prior to the agreement. (*Ibid.*)[2]

The *Cheri T.* court concluded in the alternative that "even if an overt act in furtherance of the agreement to engage in an act of prostitution was required to take place after the agreement was reached, there was sufficient evidence of such an act." (*Cheri T., supra,* 70 Cal.App.4th at p. 1408.) That alternative act in furtherance could only have been the defendant's verbal instruction to the officer that they should go to a dark place after agreeing to a price for an act of prostitution. Accordingly, the alternative analysis in *Cheri T.* supports the conclusion that words alone can be sufficient "acts in furtherance" under section 647(b).

Because the Legislature considered the law of attempt and conspiracy in enacting section 647(b), we examine those cases for additional guidance on acts in furtherance. "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) "When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' [citation], the defendant may be convicted of criminal attempt." (*People v. Toledo* (2001) 26 Cal.4th 221, 230 [109 Cal.Rptr.2d 315, 26 P.3d 1051], fn. omitted.) Allowable acts in furthering an attempted criminal threat include the use of oral communications not based upon constitutionally protected speech. (*Id.* at p. 235.) For example, in *People v. Toledo*, the defendant unequivocally stated to his wife, " 'You know, death is going to become you tonight. I am going to kill you.' " (*Id.* at pp. 225, 235.)

The case law on criminal conspiracy similarly allows for verbal acts in furtherance of the offense. "No agreement amounts to a conspiracy, unless some act, beside such agreement, be done within this state to effect the object

---

[2] The issue of timing addressed in *Cheri T.* is not before this court, and we express no view on the resolution of that issue, relying only on the discussion of the sufficiency of statements to constitute the act.

thereof, by one or more of the parties to such agreement . . . ." (§ 184.) On the crime of conspiracy to commit murder, for example, "once a punishable agreement is formed, internal discussions and arrangements between coconspirators can easily constitute overt acts in furtherance of the conspiracy. [Citation.]" (*People v. Von Villas* (1992) 11 Cal.App.4th 175, 244 [15 Cal.Rptr.2d 112].) In *People v. Von Villas*, the coconspirators unequivocally discussed and made plans in furtherance of the contract murder of the victim. (*Id.* at pp. 242–243 & fn. 12.)

■ Given the foregoing and bearing in mind the Legislature's concerns about false arrests and entrapment, we hold that words can be an act in furtherance. Not all statements will suffice; to constitute an act that satisfies the statutory requirement, the statements must be unambiguous and unequivocal in conveying that the agreed act of prostitution will occur and move the parties toward completion of the act.

### C. *Application to the Instant Case*

In this case, the court properly overruled the demurrer.

First, unlike the deficient complaint in *Gaylord,* the amended complaint set forth a statement that Kim "agreed" to and "act[ed] in furtherance" of an agreement to engage in an act of prostitution by recounting the conversation between the officer and Kim. Because the statement "in the words of the enactment describing the offense" was sufficient to give her notice of the offense charged, the amended complaint complies with the general pleading requirements of sections 950 and 952, and due process was not violated.

Second, in contrast to *Davis,* in which the prosecution alleged only getting into the cab as the act in furtherance, an act that was prior to the agreement to engage in an act of prostitution, the accusatory pleading here claimed a statement after the negotiations. In this case, the agreement to engage in an act of prostitution occurred before Kim instructed the officer to undress, a clear and unequivocal statement directed at completing the agreed-to act of prostitution. This was the type of "act directly lead[ing] to sexual contact, e.g., undressing," contemplated by the Legislature.[3]

Accordingly, because there was sufficient evidence of a verbal act in furtherance that unequivocally moved the parties toward completion of the agreed act of prostitution, the court properly overruled Kim's demurrer.

---

[3] Although the amended complaint alleged other, earlier statements as additional acts in furtherance, we find those statements too ambiguous to meet the standard we apply. Because multiple acts are not required, however, the demurrer was properly overruled.

## DISPOSITION

The petition for writ of mandate or prohibition is denied.

Johnson, Acting P. J., and Woods, J., concurred.

On February 23, 2006, the opinion was modified to read as printed above.