Filed 2/8/21  In re Andrew H. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ANDREW H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>A.H.,<br><br>      Defendant and Appellant. | A159342<br><br>(Mendocino County<br>Super. Ct. No. SCUK-JDSQ-19-1795406) |

Andrew H. (Minor) appeals from a dispositional order and related jurisdictional orders sentencing him to a term in juvenile hall based on a finding that he forcibly raped his girlfriend. Minor contends that the evidence is insufficient to prove that he used violence, force, or fear to compel his girlfriend to have sex, and that the evidence raises a reasonable doubt as to the affirmative defense that he had a reasonable mistaken belief that she had consented to intercourse. Although the evidence might have supported findings in minor's favor, the record contains sufficient evidence to support the adverse findings, so that we must affirm.

## Factual and Procedural History

In June 2019, the district attorney filed what was the fifth petition against minor under Welfare and Institutions Code section 602, alleging that

1

on May 31 he forcibly raped his girlfriend, V.L. (Pen. Code, § 261, subd. a)(2)), and thereby violated a probation condition that he obey all laws. The court issued a temporary restraining order requiring minor to stay away from V.L. Shortly thereafter, the district attorney filed a sixth petition alleging further probation violations including attempts to communicate with V.L. in violation of the order.

At hearings in November, five witnesses testified: V.L.; a 15-year-old girl named C.A. who was a friend of both minor and V.L.; a nurse who performed a sexual-assault examination of V.L.; a police officer who investigated the rape; and minor's mother.

The testimony established that V.L. and minor had been dating for about a month when, on Friday, May 31, they were in minor's bedroom for several hours. Minor's mother was home. Minor and V.L. began kissing and at minor's request V.L. grabbed his penis. The two engaged in an act of intercourse that undisputedly was consensual.

After the first act of intercourse, minor lay next to V.L. for about 10 minutes. He then indicated that he wanted to have sex again, but V.L. told him "a lot of times" that she did not want to, and said she wanted to go home. She did not feel afraid of minor. When asked why she did not try to leave the bed, she replied, "Because I knew he was going to push me down."

V.L. put her hands over her vagina. Minor grabbed her hands, held them near her shoulders for roughly five minutes, and penetrated her vagina. V.L. told minor "no," said that she did not want to have more sex because it hurt and that she wanted to go home. She testified that she tried to move away and, once, to push him off, but minor continued penetrating her and saying it was "okay." V.L. did not cry, scream, or hit him. After about five minutes, penetration ended and V.L. was able to leave the bed.

Minor then grabbed V.L.'s underwear and put them on his head, in an apparent attempt to be funny. Unamused, she demanded that he give back the underwear. He did so, then went out his bedroom window, returned with a flower, and said that he loved her. V.L. felt confused and "just wanted to go home."

Around 11:00 p.m., minor's mother drove V.L. home; minor sat with her in the back seat. V.L. testified that she was upset but talked to minor "a little bit." Minor's mother testified that V.L. and minor acted "normal" in the car, "chatting" and "laughing."

Minor's lawyer asked V.L. if, on Saturday morning, she posted photos of herself and minor together on Instagram, and she answered, "I think so, I don't remember." On Sunday, minor and V.L. went to a fair; three photos taken at the fair show them smiling, cuddling, and looking happy together.

The two left the fair and went to minor's house. Minor said he wanted to have sex again, and V.L. said no. He took off her belt and tried to pull down her pants, as she "kept telling him no," until she said that her vagina still hurt from two days before, and he relented. After V.L. contacted a male friend to take her back to the fair, she and minor had a fight that culminated in him telling her the relationship was over, pushing her out the door, and calling her a "ho" and "slut." V.L. left, and minor repeated by text that the relationship was over, and that he wished they had never been together.

Before school on Monday, June 3, V.L. cut herself on her wrist and leg. At school that day, V.L. and C.A. reported the rape to a female counselor, who summoned Ukiah police Detective Isabel Madrigal, to whom V.L. repeated her report. V.L. went to a hospital where a nurse performed a sexual-assault examination. V.L. told the nurse that she had hit minor in the face, chest, and stomach during the rape, but V.L. testified at the hearing that she had not hit him.

At Detective Madrigal's request, V.L.—accompanied by C.A. and the counselor—made three pretextual calls to minor on June 4. At the hearing, Madrigal described the calls. In the first, minor denied having raped V.L. and said she had "agreed" to have sex; he also asked to switch to video chat. In the second call, by video chat, V.L. repeatedly accused minor of rape and asked him to "just be honest and own up to his actions." During the third call, minor admitted that he had heard V.L. say "stop" the second time they had sex but had been in the moment and could not stop himself, for which he apologized. At other times in the calls, he denied having raped V.L. and said that he did not see his conduct as rape because she had already consented to sex.

Detective Madrigal later arrested minor and confronted him with his acknowledgment in the call that "he had heard [V.L.] say no or stop" and his statement that "he was in the moment, so he couldn't stop." Minor told Madrigal that he had known that C.A. and the counselor were in the room during the call, and that V.L. had "forced him to admit it" by her "consistent" allegations against him.[1] Minor did not deny having acknowledged that he had heard V.L. say "stop." He told Madrigal that his conduct did not constitute rape because V.L. had previously consented to have sexual intercourse.

Two weeks later, V.L. testified, minor texted her "that he wanted to run away and be with his dad in Texas." She began a Facebook conversation in which she "made it seem like I still loved him and I apologized for doing this to him." She did so, she testified, because otherwise "he would have run away so he wouldn't have been caught and arrested."

---

[1] The transcript quotes Madrigal as using the word "consistent," but it seems likely in context that she said or meant "persistent."

C.A. testified for the defense. She and minor were friends, and she had once been best friends with V.L. but was no longer her friend because she thought it wrong for V.L. "to call it rape when you guys already planned on having [sex]." In responding to a question by the court, C.A. testified that the day after the pretext calls, V.L. told her that she had lied about the rape out of anger at minor over an argument.[2] C.A. testified that she reported V.L.'s admission to a male school counselor, but not to Detective Madrigal.

The court found that minor had raped V.L., and thereby violated his probation. The court found it probative that V.L. had reported the rape to a counselor, and then to Detective Madrigal, within days of its occurrence, and found that Madrigal's description of the pretext calls, including minor's acknowledgment that he heard V.L. say "stop," corroborated V.L.'s testimony. "As to [C.A.]'s testimony, the totality of the testimony did not rise to the level of creating a reasonable doubt in my view." After the finding of rape, minor admitted the additional probation violations alleged in the final wardship petition.

The court ordered minor to serve 364 days in juvenile hall with credit for 195 days; set his maximum term of confinement at 9 years, 4 months, and 13 days; ordered him to perform 90 hours of community service and to stay away from V.L; and left in force all existing probation terms and conditions. Minor filed a timely notice of appeal.

## Discussion

Penal Code section 261 defines rape to include an act of sexual intercourse accomplished "against a person's will by means of force, violence,

---

[2] The court also received in evidence a transcript of a defense investigator's recording of an interview in which C.A. made similar allegations.

5

duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) " ' "The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. [Citation.]" ' [Citations.] In reviewing the sufficiency of the evidence, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*In re Cheri T.* (1999) 70 Cal.App.4th 1400, 1404.)

The record here includes evidence that minor accomplished the second act of intercourse on May 31 against V.L.'s will by means of force—that is, by removing her hands from her vagina, holding them by her shoulders, penetrating her after she told him that she did not want to have sex again, and continuing to penetrate her after she pleaded to "stop." V.L.'s testimony is not "physically impossible or inherently improbable," and suffices to support the finding of rape. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Moreover, the court was entitled to consider, as it did, that V.L.'s prompt report and Detective Madrigal's testimony corroborated her testimony.

Minor emphasizes V.L.'s testimony that she did not fear him. But rape can be accomplished "by means of force . . . *or* fear" (§ 261, subd. (a)(2), italics added), so the evidence that minor forcefully restrained V.L.'s hands during the intercourse renders her lack of fear inconsequential. Minor relies on the phrase "degree of force manifested" as used in *People v. Barnes* (1986) 42 Cal.3d 284, 304, to argue that he "did not use the force legally required to sustain a rape allegation." The defendant in *Barnes* induced fear by a show of his strength. (*Id.* at pp. 289–290.) In referring to "the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in

the mind of the victim" (*id.* at p. 304), *Barnes* does not require a "degree of force" greater than that used by minor to establish the act of rape.

Minor also notes that V.L. did not "hit him or cry, yell, or scream despite knowing that [minor]'s mother was in the home and could assist her." But the Legislature amended section 261 in 1980 to delete the element of resistance from the crime of rape. (*People v. Barnes, supra*, 42 Cal.3d at pp. 292–293.) Insofar as minor suggests that V.L.'s failure to call for help undermines her claim that the second intercourse was against her will, it was for the trier of fact to assess the credibility of her testimony.

Similarly, minor emphasizes V.L.'s conduct following the May 31 events until the fair on the night of June 2. He argues that V.L. initially indicated that she remained affectionate toward him and did not report the rape until June 3, the day after the fight in which he broke up with her and called her names, and the same day she cut herself. He also emphasizes C.A.'s testimony that V.L. admitted having lied about the rape. But while that evidence might have caused the trier of fact to reasonably doubt the veracity of V.L.'s testimony, the court did not harbor such a doubt. It is not for this court to re-weigh the evidence.

Minor also argues that the record contains evidence sufficient to raise a reasonable doubt as to the affirmative defense that he had a reasonable, good faith, mistaken belief that V.L. consented to the second act of intercourse, which the district attorney failed to disprove. (See *People v. Lujano* (2017) 15 Cal.App.5th 187, 194 [discussing affirmative defense of mistaken belief in consent].) That defense has both a subjective component and an objective one, which requires that the belief have been reasonable in the circumstances. (*People v. Maury* (2003) 30 Cal.4th 342, 424, disapproved in other part by *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901.) Here, minor did not testify or introduce any evidence of his state of mind during the events in

7

question, so the subjective element was not satisfied. (*Id*. at p. 425 ["To warrant [an instruction on mistaken belief in consent], the record must contain evidence, whether direct or circumstantial, of the defendant's state of mind at the time the offense was committed."].) And there was ample evidence to negate the objective element: V.L.'s testimony that she told minor before the second act of intercourse that she did not want to have sex again, that he removed her hands from in front of her vagina and held them while he penetrated her, that she told him to "stop," and that he acknowledged having heard her do so. The court was thus fully justified in failing to find the second, forceful intercourse excused by a mistaken belief that V.L. was consenting.

## Disposition

The challenged orders are affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.

8