163 Cal.App.4th 679 (2008)
In re R.D., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
SAN BERNARDINO COUNTY DEPARTMENT OF CHILDREN'S SERVICES et al., Respondents.
No. E044391.
Court of Appeals of California, Fourth District, Division Two.
June 3, 2008.
*681 Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Appellant.
Ruth E. Stringer, County Counsel, and Jeffrey L. Bryson, Deputy County Counsel, for Respondent San Bernardino County Department of Children's Services.
Linda Rehm, under appointment by the Court of Appeal, for Respondent Clarissa V.
Konrad S. Lee, under appointment by the Court of Appeal, for Minor.

OPINION
McKINSTER, J.
Appellant Los Angeles County Department of Children and Family Services (DCFS) originally had jurisdiction of this juvenile dependency case when the child, R.D., and the natural mother both resided in Los Angeles County. Eventually, the mother's parental rights were terminated. More recently, the child was placed with a maternal relative in San Bernardino County. The Los Angeles County Juvenile Court entered orders to transfer the supervision of the case to respondent San Bernardino County Department of Children's Services (DCS). The San Bernardino County Juvenile Court "accepted" the transfer for the sole purpose of entering orders to transfer the matter back to Los Angeles County. DCFS appeals this order of the San Bernardino County Juvenile Court. We reverse.

FACTS AND PROCEDURAL HISTORY
DCFS originally detained the child in 1994 when he was a few months old. The original dependency petition alleged that the mother was a minor herself *682 and was unable to care for the child. The father was absent also, and neither parent had made any provision to care for the child. The Los Angeles County Juvenile Court found a prima facie case that the child was at risk of physical or emotional injury from the failure of the parents to adequately supervise or protect him.
The jurisdictional and dispositional hearing was continued several times to enable the mother to attend, but ultimately proceeded by default. The Los Angeles County Juvenile Court found the allegations of the petition true under Welfare and Institutions Code section 300, subdivisions (b) and (g).[1] DCFS was ordered to provide reunification services.
At a review hearing in October 1995, the Los Angeles County Juvenile Court terminated mother's reunification services, found the child was adoptable, referred the child for an adoption evaluation, and set a selection and implementation hearing under section 366.26. The mother was advised of her right to file a writ petition.
As of March 1997, the Los Angeles County Juvenile Court did not terminate mother's parental rights, but had identified adoption as the selected permanent plan for the child. By November 1997, no adoptive home had yet been found for the child. In January 1998, however, the parental rights of both parents were terminated. The child was declared free from parental custody and control. The Los Angeles County Juvenile Court found by clear and convincing evidence that the child was likely to be adopted and also retained jurisdiction over the child.
In 1999, the child remained in adoptive planning with permanent placement services to be provided to the prospective adoptive parents. Finding an adoptive home proved difficult; accordingly, in July 2000, the permanency plan was changed to long-term foster care.
The child remained in foster placement in 2001 and 2002, while DCFS searched for an adoptive home. In August 2002, DCFS placed the child in the home of Gracie K., who was granted letters of guardianship. In 2003, the Los Angeles County Juvenile Court terminated jurisdiction, as the child was residing with the legal guardian.
In 2005, DCFS filed a petition for modification of the court's orders under section 388. DCFS sought to rescind the legal guardianship, as the child's behavior was very aggressive, and he was running away. The court did not grant the petition at that time, but did so a year later in 2006 when the *683 guardian herself asked for the termination. The Los Angeles County Juvenile Court directed DCFS to search for some relative placement for the child; in the meantime he was placed in a group home.
In the group home placement, the child experienced emotional and behavioral problems. DCFS facilitated contact of the child with a maternal aunt, Clarissa V., with a view to transitioning the child to the aunt's home. After that contact began, the child's disturbances decreased. The child's therapist agreed, noting that the child's behavior and depression were related to his hopelessness in not having contact with his mother or any other family members. His emotional state improved after contact with the aunt. The aunt sought legal guardianship of the child. In September 2006, the guardianship plan came to fruition, and new guardianship letters were issued for the aunt. The child did well in this placement, although he still had some occasional emotional and behavioral outbursts. He was receiving psychotropic medications and meeting with a psychiatrist. He received conjoint therapy with the aunt. The aunt facilitated visits with the mother, which the child enjoyed. The aunt also received support services from an agency to help her deal with the child's issues.
In August 2007, after the child had been residing with the aunt successfully for several months, the Los Angeles County Juvenile Court issued transfer orders to transfer the supervision of the case to San Bernardino County on the ground that the child and the guardian both lived in San Bernardino County.
The San Bernardino County Juvenile Court ordered the "proceedings accepted for sole purpose of return of jurisdiction to Los Angeles [County]." DCS had "recommended that these proceedings not be accepted," on the ground that, under section 17.1, subdivision (e), "if a child has been declared permanently free from the custody and control of his parent, his residence is the county in which the court issuing the order is situated. In this matter, Los Angeles will remain this minor's county of residence as the [termination of parental rights] hearing was held in that county."
The San Bernardino County Juvenile Court immediately conducted its own transfer proceedings, and issued an order transferring the dependency once more to Los Angeles County.
DCFS filed a notice of appeal after the rulings of the San Bernardino County Juvenile Court.

*684 ANALYSIS

I. Standard of Review
Much of the discussion concerns the proper interpretation of the provisions of statutes and court rules. These are issues of law that we review de novo. (Kim v. Superior Court (2006) 136 Cal.App.4th 937, 940 [39 Cal.Rptr.3d 338] [statutory construction]; In re Daniel M. (1996) 47 Cal.App.4th 1151, 1154 [55 Cal.Rptr.2d 17] [interpreting rules of court].) To the extent we review the San Bernardino County Juvenile Court's decision to transfer the case to Los Angeles County, we review that determination for abuse of discretion. (In re J. C. (2002) 104 Cal.App.4th 984, 993 [128 Cal.Rptr.2d 671].)

II. The San Bernardino County Juvenile Court Improperly Refused to Accept the Transfer from Los Angeles County
The principal question is whether the San Bernardino County Juvenile Court improperly rejected the transfer from Los Angeles County. We conclude that it did. The question involves the interplay of California Rules of Court, rules 5.610 and 5.612 (formerly rules 1425 & 1426), as well as Welfare and Institutions Code section 375. (See In re J. C., supra, 104 Cal.App.4th 984, 986-987.)
(1) As this court held in In re J. C., California Rules of Court, rule 5.612(a) (formerly rule 1426(a)), "provides that `[o]n receipt and filing of an order of transfer, the receiving court shall take jurisdiction of the case. The receiving court may not reject the case.' (Italics added.) This could not be clearer." (In re J. C., supra, 104 Cal.App.4th 984, 990.) Accordingly, as in In re J. C., the San Bernardino County Juvenile Court clearly erred in rejecting the transfer.
(2) California Rules of Court, rule 5.612(f) provides: "If the receiving court believes that a change of circumstances or additional facts indicate that the child does not reside in the receiving county, a transfer-out hearing must be held under rules 5.610 and 5.570. The court may direct the department of social services or the probation department to seek a modification of orders under [Welfare and Institutions Code] section 388 or 778 and under rule 5.570." As we indicated in In re J. C., the rules governing the transfer-in procedure mandate the acceptance of jurisdiction, with the provision of a separate transfer-out hearing if circumstances change or additional facts indicate the child does not reside in the receiving county. (In re J. C., supra, 104 Cal.App.4th 984, 991.)
*685 Technically, the San Bernardino County Juvenile Court's order recited that it did "accept" the transfer from Los Angeles, but the order of acceptance recited that the court did so "for sole purpose of return of jurisdiction to Los Angeles [County]." The San Bernardino County Juvenile Court then purported to conduct immediate transfer-out proceedings without following the proper procedures for doing so.
(3) If the receiving court disagrees with the findings underlying the transfer order, its remedy is to accept the transfer and either to appeal the transfer order, or to order a transfer-out hearing. (In re Carlos B. (1999) 76 Cal.App.4th 50, 55 [90 Cal.Rptr.2d 72].) The transfer-out hearing must be separate from the transfer-in hearing, because the court is charged with the duty to determine the residency of the child and whether the transfer is in the child's best interest. (Cal. Rules of Court, rules 5.610(e), 5.612(f); In re J. C., supra, 104 Cal.App.4th 984, 991.) The San Bernardino County Juvenile Court did not hold a separate hearing, and failed to consider at all whether the best interests of the child would be served by the retransfer.
The San Bernardino County Juvenile Court's de facto rejection of the transfer was plainly erroneous.

III. The San Bernardino County Juvenile Court Abused Its Discretion in Transferring the Case to Los Angeles County
Even if the procedural irregularities are overlooked (i.e., refusal to accept the case, or technical "acceptance" and immediate transfer-out proceedings), the San Bernardino County Juvenile Court abused its discretion in entering a transfer-out order, returning the case to Los Angeles County. This is because the court failed to take account of the overarching principle of the best interests of the child.
Under the abuse of discretion standard of review, we must uphold the San Bernardino County Juvenile Court's exercise of discretion "unless it `exceed[s] the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (In re J. C., supra, 104 Cal.App.4th 984, 993.)
Arguably, the San Bernardino County Juvenile Court had some reason to think that the child's residence was statutorily determined to be in Los Angeles County under section 17.1. That section provides: "Unless otherwise provided under the provisions of this code, to the extent not in conflict with federal law, the residence of a minor person shall be determined by the following rules:
*686 "(a) The residence of the parent with whom a child maintains his or her place of abode or the residence of any individual who has been appointed legal guardian or the individual who has been given the care or custody by a court of competent jurisdiction, determines the residence of the child.
"(b) Wherever in this section it is provided that the residence of a child is determined by the residence of the person who has custody, `custody' means the legal right to custody of the child unless that right is held jointly by two or more persons, in which case `custody' means the physical custody of the child by one of the persons sharing the right to custody.
"(c) The residence of a foundling shall be deemed to be that of the county in which the child is found.
"(d) If the residence of the child is not determined under (a), (b), (c) or (e) hereof, the county in which the child is living shall be deemed the county of residence, if and when the child has had a physical presence in the county for one year.
"(e) If the child has been declared permanently free from the custody and control of his or her parents, his or her residence is the county in which the court issuing the order is situated."
The San Bernardino County Juvenile Court relied exclusively on section 17.1, subdivision (e); because the child had been freed from parental custody in Los Angeles County, Los Angeles County must be deemed the child's residence.
(4) The proper interpretation of section 17.1 is, as previously noted, a question of law we review de novo. We must construe statutory provisions with regard to effectuating the legislative purpose (People v. Walker (2002) 29 Cal.4th 577, 581 [128 Cal.Rptr.2d 75, 59 P.3d 150]); we also must, where possible, harmonize statutes, reconcile inconsistencies in them, and construe them so as to give effect to all their parts and to the statutory scheme as a whole (In re Sarah F. (1987) 191 Cal.App.3d 398, 408-409 [236 Cal.Rptr. 480]).
The San Bernardino County Juvenile Court focused exclusively on subdivision (e) of section 17.1, and disregarded both the purpose of the provision, and its place alongside, not only other subdivisions within the same statute, but also within the juvenile dependency scheme as a whole.
(5) Section 17.1 provides alternate means of determining a child's residence. Section 17.1, subdivision (a), provides that the residence of a person *687 who has been given custody and control of a child determines the child's residence. Here, the child's legal guardian is the aunt; she resides in San Bernardino County. The aunt is also the person given care or custody of the child by a court of competent jurisdiction. Under section 17.1, subdivision (a), therefore, the child's residence should be determined to be San Bernardino County.
(6) It is true that section 17.1, subdivision (e), provides that "[i]f the child has been declared permanently free from the custody and control of his or her parents, his or her residence is the county in which the court issuing the order is situated," but that provision must be construed together with the other provisions of the same section, as well as with the other provisions of the whole statutory scheme.
(7) The legislative purpose of section 17.1, subdivision (e), may be inferred from section 366.26, subdivision (j), which provides that, upon freeing a child, the custody of the child is transferred to the exclusive care of the State Department of Social Services or to a licensed adoption agency, until an adoption is completed. In this case, adoption proved difficult. After many placement attempts, the child was placed in a legal guardianship with his aunt. The fail-safe provision of section 17.1, subdivision (e), that a child freed from parental custody and control must have some county of residence while adoption proceedings are pending, is not necessary or applicable where a legal guardianship has been achieved. Subdivision (a) of section 17.1 provides that the child's residence is that of the legal guardian. Likewise, California Rules of Court, rule 5.610, governing transfer-out proceedings, provides that the child's residence is with the person entitled to legal custody. Here, that is the aunt who was granted legal guardianship. Under either of these provisions, the child's residence is properly determined to be San Bernardino County.
Even if section 17.1, subdivision (e), applies and the child's residence is legally in Los Angeles County, the San Bernardino County Juvenile Court acted improperly, because it wholly disregarded, and made no finding concerning, the overarching principle of the best interests of the child. At a transfer-out hearing, the transferring court is required to make findings not only as to the child's residence, but also whether the transfer is in the child's best interests.
Here, both the legal guardian and the child actually lived in San Bernardino County. The placement required ongoing supervision. As in In re J. C., "the focus of the proceedings should have been which county could best monitor the [child's] well-being and the suitability of [his] placement on a monthly basis, as well as keep tabs on [his] academic progress and other *688 needs." (In re J. C., supra, 104 Cal.App.4th 984, 994.) The child is now 14 years old, "so it is reasonable to anticipate that [he] will encounter difficulties and may seek assistance from [his] social worker or legal counsel. The [child] would be hampered in seeking these services if they are reachable only by a long-distance telephone call or a two-hour drive to or from Los Angeles County." (Ibid.) The only reasonable conclusion is that the child's best interests are served by having the case supervised in San Bernardino County.

DISPOSITION
The Superior Court of San Bernardino County is ordered to accept the transfer of this case from Los Angeles County.
Hollenhorst, Acting P. J., and Richli, J., concurred.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code.