Filed 3/26/15  In re J.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E061587 |
| Plaintiff and Respondent, | (Super.Ct.No. J254676 & J254677 & J254678 & J254679 & J254680 & J254681 & J254682) |
| v. | |
| J.G., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Reversed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Adam E. Ebright, Deputy County Counsel, for Plaintiff and Respondent.

1

I

STATEMENT OF THE CASE AND FACTS

Appellant J.G., Sr. is the father of seven minors – J1 (now 10 years old), J2 (now 8 years old), J3 (now 7 years old), J4 (now 6 years old), D. (now 5 years old), J5 (now 3 years old), and J6 (now 2 years old).

This dependency was originally filed in the Orange County Superior Court. The children were removed due to allegations of substance abuse. Mother and father failed to reunify, and the case was set for a Welfare and Institutions Code[1] section 366.26 hearing to determine a permanent placement plan.

The children were originally placed in Orange County. However, after the section 366.26 hearing was set, the maternal grandmother moved and the children were placed with her in San Bernardino County. Therefore, the Orange County Court transferred the case to San Bernardino County prior to the section 366.26 hearing. The San Bernardino Court, however, concluded that it was in the best interest of the children for the case to remain in Orange County and transferred the case back.

Father now challenges the San Bernardino County Court's order transferring the case back to Orange County. Father has also filed a request for judicial notice of the opinion in a related appeal, case No. G049954 from the Court of Appeal, Fourth Appellate District, Division Three. We reserved ruling on the request for consideration with father's appeal. We hereby grant father's request for judicial notice. For the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

reasons set forth below, we reverse the court's order transferring the case back to Orange County.

## II

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Father's involvement with Orange County Children and Family Services (OCCFS) in this case began in August of 2012, after mother and the youngest child, J6, tested positive for methamphetamine at the time of J6's birth. Mother admitted to relapsing into drug use and stated that she had been using methamphetamine for approximately six months while she was pregnant with J6. Mother also had a long history with OCCFS, dating back to 2007, and had tested positive for methamphetamine when she gave birth to J3 in March of 2007.

At the time of the detention, mother and all of the children were living with the maternal grandmother in a one-bedroom apartment. Mother and the children were sleeping on the living-room floor. Father was living with a nearby relative and had never been the sole caretaker of the children. Father also had a long history of substance abuse dating back to 2003 and continued to abuse drugs despite having completed a drug diversion program in 2010.

On December 10, 2012, at the disposition hearing, the juvenile court declared the children dependents of the court, granted custody to the social services director, and ordered reunification services for both parents.

During the reunification period, father made little progress. The social workers were unable to contact him on a consistent basis, he failed to complete his parenting

3

classes, and he missed several drug tests. At the May 29, 2013, six-month review hearing, the court found that father's reunification progress was minimal, terminated reunification services, and set a section 366.26 hearing.

The social worker prepared a section 366.26 report recommending termination of parental rights and the permanent plan of adoption. At the time of the report, the children were placed with a maternal cousin in Anaheim, California. The social worker concluded that all the children were adoptable.

The social worker prepared an addendum report dated October 8, 2013, indicating that the placement with the maternal cousin would no longer be appropriate due to allegations of child abuse in the home. The social worker changed the recommendation from adoption to long-term foster care.

On January 7, 2014, the social worker prepared an addendum report for section 366.26 hearing. The report changed the recommendation back to termination of parental rights and adoption. It had taken the maternal grandmother some time to find suitable housing on her own but she was able to do so. On December 11, 2013, the five older children were placed in the maternal grandmother's new home in Hesperia in San Bernardino County. The younger two children, J5 and J6, were placed with foster parents in Dana Point, California.

On February 28, 2014, the juvenile court granted father's motion for relative placement for all of the children and ordered that the two youngest children, J5 and J6, be placed in the home of the maternal grandmother with their siblings.

4

On April 8, 2014, the social worker prepared another addendum report. The social worker reported that on March 1, 2014, the younger two children were placed with their siblings in the maternal grandmother's home. The social worker reported that it was unlikely that an adoptive home study would be approved for maternal grandmother and that, because the two younger children were recently placed in her home, the maternal grandmother would not be eligible for Kin-GAP financial assistance for at least six months. The social worker recommended that the court appoint the maternal grandmother as legal guardian.

In an addendum report dated April 28, 2014, the social worker explained that maternal grandmother's home study could not be approved because she had no means of financial support, she had not maintained stable housing, and she had not shown that she could set appropriate boundaries with the birth parents. The social worker speculated that if maternal grandmother had more time to stabilize, she might be able to get through the home study process. The social worker also opined that because all the children were now in San Bernardino County, the case should be transferred out so San Bernardino County would do the assessment. The court agreed. On April 28, 2014, the court ordered San Bernardino County to assess the maternal grandmother for adoption and transferred the case.

A San Bernardino County social worker prepared a transfer-in memorandum recommending that the case be transferred back to Orange County. The memorandum stated that the Orange County court had violated inter-county transfer protocols by transferring the case after a section 366.26 hearing had already been set. The

5

memorandum noted that it was not considered in the children's best interests to accept a transfer when there is not a viable permanent plan in place. Additionally, the social worker cited section 17.1, subdivision (d), and noted that there were some significant stability concerns with the placement with maternal grandmother.

On May 22, 2014, the San Bernardino County juvenile court held a transfer-in hearing and formally accepted the case. The court found that there was a change in circumstances because the case was inappropriately transferred out of Orange County while the section 366.26 hearing was pending. The court set a transfer-out hearing for the afternoon session of the same day.

At the transfer-out hearing, the court disclosed that it had an opportunity to discuss the case with Judge Serbino in Orange County who had ordered the transfer and confirmed that the case was still "in the midst of a .26 with an issue as to the suitability and the permanence of a placement here with the maternal grandmother." The court found that under section 17.1, subdivision (d), and due to the improper transfer of the case, it was in the children's best interest to return the matter to Orange County.

III

ANALYSIS

Father's sole contention on appeal is that the juvenile court erred in transferring the case out of San Bernardino and back to Orange County because the children's place of residence is Orange County.

Before transferring a case, the court must determine the children's residence and "consider whether transfer of the case would be in the child's best interest. The court

may not transfer the case unless it determines that the transfer will protect or further the child's best interest." (Cal. Rules of Court, rule 5.610.)

An inter-county transfer of a dependency case is reviewed for abuse of discretion. (*In re J.C.* (2002) 104 Cal.App.4th 984, 993.) The court, however, conducts a de novo review of the interpretation of relevant statutes and rules. (*In re R.D.* (2008) 163 Cal.App.4th 679, 684-686.)

A. *Residency of the Children*

Section 17.1 governs the determination of the children's residence. Section 17.1 states, in pertinent part:

"Unless otherwise provided under the provisions of this code, to the extent not in conflict with federal law, the residence of a minor person, or a nonminor dependent, as described in subdivision (v) of Section 11400, shall be determined by the following rules:

"(a) The residence of the parent with whom a child maintains his or her place of abode or the residence of any individual who has been appointed legal guardian or the individual who has been given the care or custody by a court of competent jurisdiction, determines the residence of the child.

"(b) Wherever in this section it is provided that the residence of a child is determined by the residence of the person who has custody, 'custody' means the legal right to custody of the child unless that right is held jointly by two or more persons, in which case 'custody' means the physical custody of the child by one of the persons sharing the right to custody.

. . .

7

"(d)  If the residence of the child is not determined under subdivision (a), (b), (c), or (e), the county in which the child is living shall be deemed the county of residence, if and when the child has had a physical presence in the county for one year."

In this case, father argues that section 17.1, subdivision (a), applies.  San Bernardino County Children and Family Services (CFS), however argues that section 17.1, subdivision (d), applies.  We agree with father.

Here, maternal grandmother was given the care and custody of the children.  On December 17, 2013, the social worker reported that the older five children were placed with maternal grandmother in Hesperia on December 11, 2013.  The social worker, therefore, recommended that the matter be removed from the 15-day review calendar regarding placement.  The court ordered as recommended.  At the hearing on December 17, the court also stated that it had "read, considered and accepted into evidence social services court report(s) dated 12-17-2013."

Thereafter, father moved to order the two younger siblings with maternal grandmother.  At a hearing on February 28, 2014, the juvenile court granted father's motion and ordered placement of J5 and J6 with the maternal grandmother.  They were placed with maternal grandmother on March 1, 2014.[2]

---

[2] The foster parents of J5 and J6 appealed the court's placement order.  The Court of Appeal, Fourth District, Division Three, in case No. G049954, affirmed the court's placement with maternal grandmother.  (Case No. G049954, p. 19.)

8

Hence, maternal grandmother, who resides in San Bernardino, has been given "the care or custody by a court of competent jurisdiction" of the children. Therefore, the children's place of residence under section 17.1, subdivision (a) is San Bernardino.

CFS argues that section 17.1, subdivision (a) does not apply to this case. Instead, CFS argues that section 17.1, subdivision (d), applies. Since the children did not reside in San Bernardino for one year, it could not be deemed the county of residence. CFS's argument, however, is unavailing because section 17.1, subdivision (a), applies, as discussed above.

Notwithstanding, CFS contends that grandmother had not been given the care and custody of the children because "[t]he care and custody of the children remained vested with the juvenile court and was expressly delegated to OCCFS at the December 10, 2012 dispositional hearing, when the court declared the children dependents of the court and granted custody of the children to the social service director." This argument is without merit.

When a child is removed under section 361, the care, custody, control, and conduct of the child is to be under the supervision of a social worker. The social worker, however, does not take actual care and custody of the child, but rather supervises the child's placement. The child may be a dependent of the juvenile court, but care and custody of the child is exercised by their placement, whether by a relative caregiver, as in this case (see, §§ 361.3, subdivision (7)(B) and 362.04, subdivision (a)(1)), or by a foster caregiver (see, §§ 361.49, 362.04, subdivision (a)(1), and 366, subdivision (a)(1).)

9

Orange County was not the children's residence throughout their dependency, as suggested by CFS, just because the children were removed at disposition in Orange County. If this were the case, there would never be any need to transfer cases from one county to another.

In this case, the court placed the children in the maternal grandmother's care. She was given both the care and custody of the children. Therefore, section 17.1, subdivision (a), applies. Because the maternal grandmother resides in San Bernardino with the children, the residence of the children is San Bernardino, not Orange County.

B. *Best Interest of the Children*

Notwithstanding, even if section 17.1, subdivision (d), applies as CFS suggests, the San Bernardino County Juvenile Court abused its discretion in entering the transfer-out order and returning the case to Orange County. "This is because the court failed to take account of the overarching principle of the best interests of the child[ren]." (*In re R.D.*, *supra*, 163 Cal.App.4th at p. 685.)

In *In re R.D.*, Los Angeles County Department of Children and Family Services (DCFS) originally had jurisdiction of the juvenile dependency case wherein R.D. and the natural mother resided in Los Angeles County. R.D. was placed with a maternal relative in San Bernardino County. The Los Angeles Juvenile Court entered orders to transfer the supervision of the case to the San Bernardino County Department of Children's Services. The San Bernardino County Court accepted the transfer and then transferred the matter back to Los Angeles. DCFS appealed the order. (*In re R.D.*, *supra*, 163 Cal.App.4th at p. 681.)

10

In that case, we stated that even if R.D.'s legal residence was in Los Angeles County, "the San Bernardino County Juvenile Court acted improperly, because it wholly disregarded, and made no finding concerning, the overarching principle of the best interests of the child. At a transfer-out hearing, the transferring court is required to make findings not only as to the child's residence, but also as to whether the transfer is in the child's best interests." (*In re R.D.*, *supra*, 163 Cal.App.4th at p. 687.)

In *In re R.D.*, *supra,* 163 Cal.App.4th 679, we found that because both the legal guardian and the child actually lived in San Bernardino County and the placement required ongoing supervision, "'the focus of the proceedings should have been which county could best monitor the [child's] well-being and the suitability of [his] placement on a monthly basis, as well as keep tabs on [his] academic progress and other needs.' [Citation.] . . . The only reasonable conclusion is that the child's best interests are served by having the case supervised in San Bernardino County." (*Id.* at pp. 687-688.)

Here, the San Bernardino Juvenile Court stated that the case "is still in the midst of a .26 with an issue as to the suitability and the permanence of a placement here with the maternal grandmother." Therefore, the court found that "it is in the best interest of these children that the matter go back to Orange County and that the Court will find it promotes the best interest of the children to do so." We disagree.

Just as in *In re R.D.*, *supra*, 163 Cal.App.4th 679, we fail to see how the supervision of the maternal grandmother and the children, who reside in Hesperia, would be best done by a social worker in Orange County, and not by a social worker in San Bernardino County. A social worker charged with supervising a placement must, as

11

frequently as possible, visit a placement and make recommendations of local services available for support. A local social worker is far more likely and able to fulfill these duties as opposed to a social worker who works in Orange County. Because the children are residing in San Bernardino County, "the only reasonable conclusion is that the child[ren]'s best interests are served by having the case supervised in San Bernardino County." (*Id.* at p. 688.)

IV

DISPOSITION

The juvenile court's order transferring this matter to Orange County is reversed. The case is remanded to the San Bernardino Juvenile Court to accept the transfer-in of this case from Orange County.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                            J.

We concur:

RAMIREZ
               P. J.

CODRINGTON
                    J.

12