Filed 12/29/15  In re Ashley L. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ASHLEY L., a Person Coming Under the Juvenile Court Law. | B261584<br>(Los Angeles County<br>Super. Ct. No. DK05078) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>C.A.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Tony L. Richardson, Judge.  Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Kimbery Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

C.A. (Mother) contends that the dependency court improperly ordered this matter pertaining to Mother's daughter, Ashley L., transferred from Los Angeles County to Imperial County. We find that the dependency court did not abuse its discretion or otherwise err in ordering the case transferred, and accordingly affirm.

**<u>BACKGROUND</u>**

Mother has three children: Ashley, born in 2003; L.L., born in 2006; and D.S., born in 2010. Each child has a different biological father. In May 2014, the Department of Children and Family Services (DCFS) received a referral alleging that Mother—who was living with the three children in Los Angeles County—was using drugs. The referral further reported that Ashley, who has attention deficit hyperactivity disorder (ADHD), was not receiving her medication. A social worker interviewed the children's maternal grandmother, who stated that mother had a history of drug use and previous involvement with DCFS. Mother admitted that she previously abused marijuana, methamphetamine, and cocaine, and had recently used methamphetamine and marijuana.

A prior DCFS referral, in 2012, alleged that Mother used cocaine and methamphetamine, which caused her to hallucinate and leave the children for days at a time. Mother received family maintenance services and completed a substance abuse program, and the prior DCFS case was closed in 2013.

Ashley was interviewed in connection with the May 2014 referral. She told the social worker that she had not taken her ADHD medication for a while. She had been sent home from school early that day because she did not listen to her teacher and did not want to do her school assignments. Ashley stated that Mother took good care of her. She did not see her father, Jesus L. (Father), regularly, but had frequent telephone contact with him. She recently spent three weeks with him during a school break and had a good time. She wanted to continue living with Mother and continue visiting Father.

Father was living in Imperial County with his wife and their daughter. He was interviewed and stated he had always been active in Ashley's life and had regular contact with her on weekends and holidays. In addition, during Mother's previous involvement with DCFS, Ashley resided with him from July to December 2012. At the time of the

2

interview, Father was temporarily staying at the home of Ashley's paternal grandmother in Los Angeles County.

Mother reported that Ashley had been diagnosed with ADHD and bipolar disorder. Ashley was prescribed two types of medication but had not been taking either of them for the past month because Ashley was uninsured and Mother could not afford to purchase the medication.

At the May 2014 detention hearing, each minor was ordered detained and released to their respective fathers. The dependency court ordered sibling visits and monitored visits for Mother.

Ashley was interviewed again in June 2014. She was highly active and unable to sit still during the interview. She said that she did not need her medication because it made her feel frustrated. She acknowledged, however, that it would help her focus and remain calm. When Ashley lived with Mother, Mother would have parties with drinking and smoking. Ashley said that she and her siblings often had to take care of themselves because Mother was "not there for" them. Ashley loved Mother and liked visiting her, but did not want to return to live with her. She also did not want to live with Father because she got bored at Father's home and had no friends there. She wished to live with her paternal grandmother.

Father reported that he obtained a medical appointment for Ashley and had re-enrolled her with insurance. He had also enrolled her in therapy. Ashley continued to act inappropriately in school and was physically aggressive toward other children.

Meanwhile, Mother was not cooperating or communicating with DCFS. She failed to show up at scheduled appointments and was not participating in services. Mother had telephone contact with Ashley, but no in-person visits. Ashley also had not had any sibling visits.

At the October 2014 adjudication and disposition hearing, Mother pled no contest to an amended count relating to her drug use. The dependency court sustained the section

3

300 petition,[1] finding that Mother's drug use limited her ability to provide regular care and supervision of the children.

Mother testified during the disposition portion of the hearing. She testified that she wanted to reunify with her children and that she had a difficult time visiting Ashley because she lived four hours away. Mother stated she was willing to participate in a drug treatment program if it was scheduled around her work hours.

The dependency court declared all three children dependents and terminated jurisdiction as to L.L. and D.S., granting joint legal custody of the two to the parents and physical custody to the respective fathers. Ashley was ordered removed from Mother and placed with Father; Mother was to receive enhancement services, including drug testing and a drug and alcohol program. The court ordered monitored visits for Mother with Ashley and individual counseling for Ashley.

In January 2015, DCFS filed a motion to transfer the case to Imperial County. DCFS contended that the transfer was in the best interests of Ashley because Father had physical custody of her and resided in Imperial County, and that the family was better served in Imperial County, rather than having to travel to Los Angeles County for services.

At the hearing, Mother's counsel objected to the motion, arguing that service was deficient and that the motion did not indicate whether Mother would be able to continue receiving services. Counsel argued that the transfer would likely make it impossible for Mother to complete drug testing or a drug program. DCFS argued that the services were for the benefit of Ashley and that Mother was receiving enhancement services only.

The dependency court ruled in favor of DCFS and signed a transfer order, finding that Ashley's legal residence was in Imperial County and that transfer of the case was in her best interests. The court determined that transfer was warranted because Father and

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

Ashley resided in Imperial County. The January 15, 2015, transfer order noted that a section 364 hearing had been scheduled for April 2, 2015.

Mother timely appealed the transfer order.

## DISCUSSION

The dependency court's order transferring the case to Imperial County is reviewed for an abuse of discretion. (*In re R.D.* (2008) 163 Cal.App.4th 679, 685.) We affirm such an order "unless it 'exceed[s] the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'" (*In re J. C.* (2002) 104 Cal.App.4th 984, 993.)

### I. The child's best interests

California Rules of Court, rule 5.610(c) states: "(1) After making its jurisdictional finding, the court may order the case transferred to the juvenile court of the child's residence if: [¶] (A) The petition was filed in a county other than that of the child's residence; or [¶] (B) The child's residence was changed to another county after the petition was filed." This transfer may occur before or after the disposition hearing. (Cal. Rules of Court, rule 5.610(c)(3).) In deciding whether to order a transfer to the county in which the child resides, the dependency court must consider the best interests of the child. (Cal. Rules of Court, rule 5.610(e); *In re J.C.*, *supra*, 104 Cal.App.4th 984, 992.)[2]

Mother contends that the dependency court abused its discretion because it made no finding that the transfer to Imperial County would be in Ashley's best interests. This contention is directly belied by the record—the court found that a transfer would serve Ashley's best interests because she was residing in Imperial County.

The dependency court had ample basis to make this determination. The primary question in a case such as this is: Which county can best monitor the child's well-being

---

[2] Alternatively, pursuant to section 375, the dependency court may order a case transferred to the county where the parent resides, if such a transfer would be in the child's best interests. (*In re J.C.*, *supra*, 104 Cal.App.4th 984, 991-992.)

and the suitability of placement on a continuing basis, and oversee the child's academic progress and other needs, such as therapy and medication? (See *In re J.C.*, *supra*, 104 Cal.App.4th 948, 994.) It is clear that the answer in this matter is the county of the child's residence. Ashley was placed in Father's physical custody in a location somewhat distant from Los Angeles County. Given Ashley's residence, it would be unreasonable to expect the Los Angeles County dependency system to monitor Ashley's needs and well-being in a manner superior to Imperial County.

Mother's primary point of contention seems to be that transfer of the matter was not in her own best interests. But that does not mean that the transfer would not benefit Ashley. Mother was provided with enhancement services, not reunification services. "Enhancement services are child welfare services offered to the parent not retaining custody, designed to enhance the child's relationship with that parent." (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1497, fn. 1.) As Ashley was appropriately placed with Father, formal reunification with Mother was not a priority. (See *In re J. C.*, *supra*, 104 Cal. App. 4th 984, 994 [where reunification was not the focus, the mother's county of residence had "very little bearing" on decision of which venue would serve children's best interests].)

Accordingly, the dependency court did not err in determining that transfer of the case to Imperial County was in Ashley's best interests and in ordering the case transferred.

## II. Inter-county transfer protocol

Mother's second argument is that the transfer order violated the Southern California Inter-County Transfer Protocol (Protocol).[3]

The Protocol states, in relevant part: "Absent extraordinary circumstances, a case shall not be transferred out less than 90 days prior to the next scheduled review hearing. Review hearings include those under WIC §§ 366.21(e), 366.21(f), 366.22, 366.25, and 366.3." (Protocol, ch. 2(C.)(5.).) Mother argues that, because a section 364 hearing was scheduled for April 2, 2015, fewer than 90 days after the January 15, 2015, transfer order, the dependency court was without authority to order a transfer.

We disagree. First, Mother provides no compelling reason to find that the subject Protocol section prevents transfer when a section 364 hearing is pending. The various review hearings specifically listed in the Protocol section pertain to hearings for children who have been removed from both parents and placed in foster care, and function to determine whether a child can be returned to a parent's custody or whether a permanent plan will be finalized. (§§ 366.21, subd. (e); 366.21, subd. (f); 366.22; 366.25; 366.3.) In contrast, section 364 is not termed a "review" hearing and applies in cases where a child is not removed from the physical custody of his or her parent or guardian. (§ 364.) The focus at a section 364 hearing is whether continued dependency court supervision is necessary. (§ 364, subd. (c).)

Furthermore, even if the subject Protocol section did apply to a section 364 hearing, Mother has failed to show any prejudice. At the time the transfer order was entered, the section 364 hearing was not to be held until 77 days later. Mother does not explain how the alleged deficiency of a 13-day pendency impacted her or Ashley.

---

[3]  The Protocol was approved and enacted by the presiding judges of the juvenile courts of Los Angeles, San Diego, San Bernardino, Riverside, Imperial, and Orange Counties to facilitate the transfer of delinquency and dependency cases from one county to another. (Protocol, pp. 3-4.) The protocol may be found, as of the date of this opinion, at http://www.riverside.courts.ca.gov/juvenile/intercountytransferprotocol.pdf.

Finally, Mother does not establish that a possible violation of the Protocol, as of January 2015, would warrant reversal. The Protocol was not formally enacted until September 8, 2015. (Protocol, p. 4.) At the time the transfer order was entered, the Protocol was merely a "pilot project." (Protocol, p. 3.) And this pilot project ended in February 2015 (*ibid.*), prior to the scheduled section 364 hearing. We have no cause to determine whether a violation of the Protocol, after it was actually enacted, would necessitate reversal. But we see no reason to find that an order issued at the end of the pilot period would mandate reversal, particularly when it appears that the order does not contravene the Protocol.

## DISPOSITION

The dependency court's January 15, 2015, order transferring the case to Imperial County is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

8